DECISION AND JUDGMENT ENTRY
This is an appeal from an Adams County Common Pleas Court judgment denying the petition for postconvictiofl relief filed by Gary W. Howell, defendant below and appellant herein.
Appellant raises the following assignment of error for review:
 "APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, BY TRIAL COUNSEL'S FAILURE TO OBJECT TO THE ADMISSION OF VIDEOTAPED DEPOSITIONS WHEN THE TRIAL COURT MADE NO FINDING THE CHILDREN WOULD SUFFER SERIOUS EMOTIONAL TRAUMA."
Our review of the record discloses the following facts. On December 20, 1996, the trial court found appellant guilty of two counts of gross sexual imposition and sentenced appellant to consecutive terms of imprisonment of two years on each count. Appellant filed a direct appeal from the trial court's judgment of conviction and sentence and we affirmed the trial court's judgment. See State v. Howell (Dec. 16, 1997), Adams App. No. 636, unreported. Additional facts are stated in our prior opinion.
On August 5, 1997, appellant filed a motion for leave to file a delayed postconviction relief petition and his petition to vacate his sentence. On September 22, 1997, the trial court denied appellant's August 5, 1997 motion without conducting a hearing.
On April 14, 1999, appellant filed a petition to vacate and set aside his sentence pursuant to R.C. 2953.21. In his petition, appellant argued that his sentence should be set aside and a new trial ordered because he received ineffective assistance of trial counsel. Appellant alleged that trial counsel was ineffective by failing to challenge the competency of the child witnesses and by failing to object to the admission into evidence of the children's videotaped depositions.
On June 7, 1999, the trial court dismissed appellant's petition without holding an evidentiary hearing. Appellant filed a timely notice of appeal.[1]
In his sole assignment of error, appellant asserts that the trial court erred by overruling his petition for postconviction relief because he demonstrated that he received ineffective assistance of counsel. Appellant contends that his trial counsel rendered ineffective assistance of counsel by failing to object to the admission of the videotaped testimony of the child victims.
Initially, we note that appellant did not timely file his April 14, 1999 postconviction relief petition. R.C.2953.21(A)(2) provides that a petition for postconviction relief must be filed "no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction," or "[i]f no appeal is taken, the petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal."
In the case at bar, the trial transcript in appellant's direct appeal was filed on February 21, 1997. Appellant, therefore, had one hundred eighty days after February 21, 1997, within which to file a petition for postconviction relief. Appellant's April 14, 1999 petition falls well outside the one hundred eighty day time frame. We further note that appellant's April 14, 1999 petition did not allege that pursuant to R.C.2953.23, he should be permitted to file his petition after the expiration of the statutory time limitation.
When a petition for postconviction relief is untimely filed, R.C. 2953.23(A)[2] divests a trial court of jurisdiction to hear the petition unless both of the following apply:
(1) Either of the following applies:
 (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
 (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
 (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable fact finder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable fact finder would have found the petitioner eligible for the death sentence.
Thus, before a trial court may entertain an untimely filed petition for postconviction relief, the petitioner must establish: (1) that he was unavoidably prevented from discovering the facts upon which he bases his petition, or that the petitioner's claim is based upon a newly-created federal or state right; and (2) that clear and convincing evidence demonstrates that no reasonable fact finder would have found him guilty in the absence of the alleged constitutional error.
In the case sub judice appellant did not demonstrate that R.C. 2953.23 excused the untimely filing of his petition. Thus, the trial court was not permitted to entertain his petition.
Additionally, we note that res judicata applies to bar raising piecemeal claims in successive postconviction relief petitions that could have been raised, but were not, in the first postconviction relief petition. In State v. Sabo (November 18, 1996), Athens App. No. 95 CA 1701, unreported, we stated:
 "The doctrine of res judicata applies to bar piecemeal raising in successive petitions for post-conviction relief issues which could have been, but were not, raised in a first such petition. State v. Jones (Mar. 3, 1994), Franklin App. No. 93APA10-1378, unreported. Thus, if claims brought in a second petition could have been raised in a first petition, then a showing of `good cause' pursuant to R.C. 2953.23(A) must entail an explanation of why such claims were not advanced in the initial petition. State v. Glenn (Mar. 17, 1995), Portage App. Nos. 94-P-0005 and 94-P-0018, unreported."
Thus, if claims in the petitioner's second petition could have been raised in the first petition, a showing of good cause pursuant to R.C. 2953.23(A) must explain why the claims were not advanced in the first petition. We note that in the case subjudice, appellant failed to explain why the claims raised in the instant petition were not addressed in his prior (August 5, 1997) postconviction relief petition.
Assuming, arguendo, that appellant properly had complied with the postconviction relief procedure, we believe that appellant's claim that he received ineffective assistance of counsel is without merit. The postconviction relief statute, R.C. 2953.21,[3] provides a remedy for a collateral attack upon judgments of conviction claimed to be void or voidable under the United States or the Ohio Constitution. See R.C. 2953.21(A)(1); See, e.g., State v. Calhoun (1999), 86 Ohio St.3d 279, 281,714 N.E.2d 905, 909; Freeman v. Maxwell (1965), 4 Ohio St.2d 4,210 N.E.2d 885. To prevail on a postconviction relief petition, a petitioner must establish that he suffered an infringement or deprivation of his constitutional rights. See R.C.2953.21(A)(1); See, e.g., Calhoun.
The postconviction statute is not intended, however, to permit "a full blown retrial of the [petitioner's] case." Statev. Robison (June 19, 1989), Pickaway App. No. 88 CA 15, unreported. Rather, "adjudication is confined solely to claimed constitutional violations." Id. "[C]laimed procedural or other errors at trial not involving constitutional rights are not relevant or subject to review." Id. see, also, State v. Akers
(Feb. 2, 1998), Lawrence App. No. 97 CA 22, unreported.
The filing of a petition for postconviction relief does not automatically entitle the petitioner to an evidentiary hearing. See, e.g., Calhoun, 86 Ohio St.3d at 282, 714 N.E.2d at 910
(citing State v. Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169). The trial court first must determine whether substantive grounds for relief exists. R.C. 2953.21(C); Calhoun,86 Ohio St.3d at 282-283, 714 N.E.2d at 910. Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence to demonstrate that the petitioner suffered a violation of the petitioner's constitutional rights. Id.; Statev. Jackson (1980), 64 Ohio St.2d 107, 112, 413 N.E.2d 819, 823, syllabus. Moreover, before a hearing is warranted, the petitioner must demonstrate that the claimed "errors resulted in prejudice." Calhoun, 86 Ohio St.3d at 283, 714 N.E.2d at 910. The decision to grant the petitioner an evidentiary hearing is left to the sound discretion of the trial court. See Calhoun,86 Ohio St.3d at 284, 714 N.E.2d at 911 (stating that the postconviction relief "statute clearly calls for discretion in determining whether to grant a hearing")
In determining whether substantive grounds for relief exist, the trial court must examine the petition, any supporting affidavits, any documentary evidence, and all the files and records from the case. R.C. 2953.21(C).
In the case at bar, appellant asserts that he suffered an infringement of his Sixth Amendment right to the effective assistance of trial counsel. Appellant claims that his trial counsel's deficient performance warrants setting his conviction aside and ordering a new trial. We disagree with appellant.
The Sixth Amendment right to counsel protects "the fundamental right to a fair trial." Strickland v. Washington
(1984), 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674. "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id.,466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d 674. Thus, effective counsel is one who "plays the role necessary to ensure that the trial is fair," id., 466 U.S. at 685, 104 S.Ct. at 2063,80 L.Ed.2d 674, and "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id.,466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d 674.
To establish that defense counsel's conduct so undermined the functioning of the adversarial process, a defendant must establish: (1) that "counsel's performance was deficient"; and (2) that the "deficient performance prejudiced the defense."Id., 466 U.S. at 687, 104 S.Ct. at 2063, 80 L.Ed.2d 674. Counsel's performance is deficient if he "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id., 466 U.S. at 687,104 S.Ct. at 2064, 80 L.Ed.2d 674; see, also State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373 (stating that counsel's performance is deficient if counsel substantially violated one of his essential duties to his client); State v. Peeples (1994),94 Ohio App.3d 34, 44, 640 N.E.2d 208, 215 (stating that counsel's performance is deficient if it "raise[s] compelling questions concerning the integrity of the adversarial process"). To prove that defense counsel's deficient performance prejudiced the defense, a defendant must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687,104 S.Ct. at 2063, 80 L.Ed.2d 674; see, also, Bradley, supra.
When addressing an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. See State v.Phillips (1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643, 658
(stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made) Rather, the reviewing court "must be highly deferential."Strickland, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d 674. As the Strickland Court stated, a reviewing court:
 "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"
Id., 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d 674.
Appellant asserts that his trial counsel provided ineffective assistance by failing to object to the admission into evidence of the child victims' videotaped depositions and not attempting to require the children to provide live, in-court testimony.[4] Appellant points out that the trial court did not hold a hearing to determine if the prosecution had met its burden to provide testimony by the child witnesses outside appellant's presence. Thus, appellant argues that his right to confront witnesses, as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, was violated.
In State v. Eastham (1988), 39 Ohio St.3d 307, 309,530 N.E.2d 409, 411, the Ohio Supreme Court, citing Coy v. Iowa
(1988), 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857, spoke to the importance of the fundamental right to confront witnesses:
 "The Coy decision relies upon how firmly rooted the right to confront witnesses is in jurisprudential history:
 `The Sixth Amendment's guarantee of face-to-face encounter between witness and accused serves ends related both to appearances and to reality. This opinion is embellished with references to and quotations from antiquity in part to convey that there is something deep in human nature that regards face-to-face confrontation between accused and the accuser as `essential to a fair trial in a criminal prosecution.' * * * [Citation omitted.] What was true of old is no less true in modern times. * * *
 `The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." Z. Chafee, The Blessings of Liberty 35 (1956), quoted in Jay v. Boyd, 351 U.S. 345, 375-376 [76 S.Ct. 919, 936, 100 L.Ed. 1242] * * * (1956) (Douglas, J., dissenting). It is always more difficult to tell a lie about a person "to his face" than "behind his back." * * * That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs. Coy v. Iowa, supra, at ___, 108 S.Ct. at 2801-2802, 101 L.Ed.2d at 864-866. We find these observations to be equally applicable to the right of confrontation guaranteed by Section 10, Article I of the Ohio Constitution."
The Eastham court at 39 Ohio St.3d 310, 530 N.E.2d 414, further spoke to the findings necessary to establish that a particular child witness needs special protection when providing testimony (i.e. some alternative to live, in-court, face-to-face testimony).
 "Coy dismissed such a generalized determination of whether an exception existed to the right of confrontation: `Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception.' Id. at ___, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. In the case at bar, the trial court noted that many judicial and psychological hearings had affected the child and that it instituted the procedure `to prevent any further * * * traumatization of the child.'
 However, the record fails to reveal any specific facts upon which the trial court based its finding. No particularized finding concerning the emotional well-being of this child and the necessity for this procedure exists. While attempts to comfort the child are laudable, we must bear in mind that the procedure employed by the trial court severely violated appellant's constitutional right to confrontation. The Coy holding makes that clear. Moreover, the procedure employed varied from the procedure adopted by our own General Assembly in one significant aspect. While R.C. 2907.41 was not yet in effect at the time, we do note that this section provides for a monitor to be placed in the same room as the witness so that he or she can observe the defendant.
 In light of the thin record before us, concerning the necessity of this procedure, the United States Supreme Court's holding in Coy and the severity of the violation of appellant's constitutional right to confront witnesses against him, we cannot conclude that the strictures of both Confrontation Clauses must give way in this particular action. A more particularized finding of necessity would first be required for this court to employ an exception and uphold this judgment."
We are, of course, mindful of the great importance of a criminal defendant's fundamental right to confront witnesses. After our review of the record in the case sub judice, however, we do not believe that appellant has demonstrated that he received ineffective assistance of trial counsel. First, we note that at least one Ohio appellate court has recognized that the decision not to object to the admission into evidence of a child's videotaped deposition could be considered sound trial strategy.[5] See State v. Cupp (Nov. 2, 1994), Shelby App. No. 17-92-22, unreported (noting that live testimony may be more damaging than videotaped testimony and stating that "defense counsel strategically chose not to object to the admission of videotaped testimony"). We likewise recognize that trial counsel may, in a strategic decision, conclude that a child victim's videotape testimony may, under certain circumstances, appear less credible or reliable than live, in-court testimony.
Second, assuming trial counsel's decision not to object to the admission of the children's videotaped depositions constitutes deficient performance, appellant has not established that such deficient performance prejudiced his defense. At this juncture, we note that evidence other than the children's testimony was adduced at trial to prove the elements of the gross sexual imposition offenses. A review of the record reveals that the prosecution introduced several incriminating statements made by appellant.[6]
Additionally, although appellant posits that the remedy for improper compliance with former R.C. 2907.41[7] is exclusion of the child's testimony, we do not agree with appellant's proposition. We believe that had defense counsel objected to the use of the videotaped depositions, the remedy would have been to require the children to appear and to testify at trial. Thus, appellant's argument that his defense was prejudiced because trial counsel's decision not to object to the videotaped depositions resulted in the admission of evidence that otherwise would not have been admitted is speculative. Moreover, any failure by the trial court to strictly adhere to the procedures set forth in R.C. 2907.41 would not render the children's testimony wholly inadmissible.
Accordingly, based upon the foregoing reasons we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
HARSHA, J.: Concurs in Judgment Opinion with Opinion
KLINE, P.J.: Concurs in Judgment Opinion
 BY: ______________________ PETER B. ABELE, Judge
[1] We note that the appellate record contains a pro se brief filed on the same date as appellant's notice of appeal. Appellant's pro se brief argues trial counsel's ineffectiveness in failing to object to the videotaped depositions and in failing to challenge the competency of the child witnesses. Our review of the record, however, reveals that trial counsel filed a motion to determine the competency of the child witnesses and that the trial court held a hearing regarding the children's competency as witnesses. Thus, appellant's argument that his trial counsel rendered ineffective assistance of counsel for failing to challenge the competency of the child witnesses has no merit.
[2] R.C. 2953.23 provides:
 (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section * * *.
[3] The statute provides as follows:
 (A)(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
* * *
 (C) * * * Before granting a hearing on the petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized record of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
 (D) Within ten days after the docketing of the petition, or within any further time that the court may affix for good cause shown, the prosecuting attorney shall respond by answer or motion. Within twenty days from the date the issues are made up, either party may move for summary judgment. The right to summary judgment shall appear on the face of the record.
 (E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending.
[4] Appellant's grandchildren, ages five and six, gave testimony by videotape outside the presence of appellant.
[5] Support for the conclusion that trial counsel's decision not to object to the videotaped depositions being introduced at trial may be found in a December 9, 1996 motion filed by defense counsel requesting the court to permit defense counsel to conduct a further videotaped deposition of one of the children.
[6] As we noted in appellant's direct appeal, law enforcement officers testified that appellant made several incriminating statements during his polygraph examination at the Cincinnati Police Division's polygraph unit:
 "When Detective Tighe finished administering the test, he advised appellant that the test results indicated that appellant was not truthful in answering the questions concerning his acts of sexual molestation upon his granddaughter, Elizabeth, and his grandson, D.J. At that point, from the adjoining room, Deputy Heitkemper observed appellant `put his head down and said "well, I guess I need to clear this up."' "from bottom Appellant then told Detective Tighe that he had touched Elizabeth's bare breasts `more than a couple of times, that he `touched her vagina two or three times,' that he `stuck [his] fingers in to [sic] her vagina two or three times,' that `one time Elizabeth asked me if she could stuck [sic] my penis,' and that he `sucked on her bare breasts two times.
 After appellant finished the session with Detective Tighe, Deputy Heitkemper entered the interview room with a tape recorder. He turned the tape recorder on and reviewed the notification of rights form with appellant. When Deputy Heitkemper reiterated the statements on the notification of rights form, appellant did not indicate that he wished to end the interview. Rather, appellant indicated that he wished to make `some admissions about some things that [he had] done and some denials about some things that [he was] accused of and that hadn't occurred. Appellant admitted that he had `masturbated' his grandson, that he had touched his granddaughter's bare breast, that he had sucked on his granddaughter's breast, that he touched his granddaughter's vagina, and that he put his fingers into her vagina. Appellant also denied allegations involving two of his other grandchildren. After Deputy Heitkemper turned the tape recorder off, appellant told the deputy that `he needs to get some help for this and he said he was glad he talked about it.' Appellant then freely left the interview room and drove home." See State v. Howell
(Dec. 16, 1997), Adams App. No. 636, unreported.
[7] R.C. 2907.41 has been renumbered to R.C. 2945.481.